UNITED STATES *v*. FISHER SCIENTIFIC COMPANY (No. 4740)[1]

United States Court of Customs and Patent Appeals, February 6, 1953

*Charles J. Wagner*, Acting Assistant Attorney General (*Daniel I. Auster* and *Chauncey E. Wilowski*, special attorneys, of counsel), for the United States.
*Jerome G. Clifford* for appellee.

[Oral argument December 12, 1952, by Mr. Auster and Mr. Clifford]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges

JOHNSON, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division (Reap. Dec. 8106), affirming the judgment of the single judge (Reap. Dec. 7878).

The appeal embraces eight appeals for reappraisement, which were consolidated for the purpose of trial. Seven of the cases involve certain precision analytical balances, in various models, for weighing small quantities of materials. One case involves an importation of special magnifiers for use with said balances.

The parties agree that the courts below correctly held that the proper basis for valuation is foreign value as defined in section 402 (c), Tariff Act of 1930, as amended by the Customs Administrative Act

of 1938. The essential issue in each case is whether the correct foreign value is the appraised value or the reappraised value, which latter is the entered value,[1] or the claimed value in those cases where the importations were entered under duress. The appraised value in each instance is approximately 25% higher than the entered or claimed value.

Section 402 (c), as amended, provides as follows:

(c) Foreign Value—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Appellant contends broadly that appellee has failed to overcome his two-fold burden of proof as set out in section 2633, Title 28, U. S. C., which provides that:

The value found by the appraiser shall be presumed to be the value of the merchandise. The burden shall rest upon the party who challenges its correctness to prove otherwise.

More specifically, appellant contends that there is no substantial evidence in the record to support the lower courts' determination of the usual wholesale quantities upon which the reappraised valuation is based.

In order to prove foreign value as a basis for reappraisement under section 402 (c), *supra*, the party challenging the appraiser's valuation in the first instance must meet every material issue in the case. This requires that he establish, *inter alia*, the *usual wholesale quantities* in which such or similar merchandise was freely offered for sale to all purchasers in the ordinary course of trade in the principal markets of the country from which exported. If he fails to establish the usual wholesale quantities, he has failed to meet his statutory burden of proof, and the valuation by the appraiser must stand. *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495.

The essential facts of the case are contained in an affidavit by one Hans H. Mettler, introduced by the importer as plaintiff's Exhibit 1, and in a consular report introduced as defendant's Exhibit A.

Affiant Hans Mettler is a brother of E. Mettler, the sole owner and proprietor of the establishment in Switzerland which manufactures the imported balances, and is also a business director of that establishment. The pertinent portions of Exhibit 1 are set out below:

---

[1] The reappraised values vary slightly from the entered or claimed values, due to application by the trial court of a slightly higher turnover sales tax rate than that claimed by appellant. Since that has not been put in issue here, we shall not discuss it further.

\* \* \* At no time prior to, at or about or after the dates of exportation herein were Analytical Balances or parts therefor, or instruments corresponding thereto, of similar material, construction, design or manufacture freely offered for sale or sold or manufactured in Switzerland other than by the said E. Mettler.

Prior to, at or about and since the dates of exportation herein it was and is the ordinary course of trade of E. Mettler to freely offer for sale and to freely sell Analytical Balances and parts thereof without restriction as to quantity, use, resale, price, disposition, or any other restriction or limitation, to purchasers who buy for their own use or consumption and to purchasers who buy them for the purpose of resale. To any and all of these purchasers in Switzerland and to all purchasers these Analytical Balances were freely offered for sale and sold, as aforesaid, in quantities of one to four of one model or assorted models at the following prices:[2]

> Model 200 A 3, Swiss Francs 2,040.00 plus Swiss sales tax;
> Model 200 A4N, Swiss Francs 2,140.00 plus Swiss sales tax;
> Model 100 A5M, Swiss Francs 2,400.00 plus Swiss sales tax,

and in quantities of five or more of one or assorted models at the following prices:[3]

> Model 200 A 3, Swiss Francs 1,530.00, plus Swiss sales tax;
> Model 200 A4N, Swiss Francs 1,605.00, plus Swiss sales tax;
> Model 100 A5M, Swiss Francs 1,800.00, plus Swiss sales tax.

\*     \*     \*     \*     \*     \*     \*

Parts of the subject Analytical Balances were and are freely offered for sale and sold to any and all purchasers as aforesaid, at the prices set forth in the above described invoices, the prices of each particular part being the same to all purchasers, whatever and regardless of the quantity purchased thereof. However, such parts are often given free of charge for the purpose of replacing broken parts.

Those who bought these Analytical Balances for their own consumption or use and not for resale purchased in quantities of one model to as many as ten of one or assorted models and those who purchased for the purpose of reselling them, bought in quantities of five upward of one model or assorted models. *Of all the sales made in the ordinary course of trade in the principal markets of Switzerland, in quantities of five or more of one model or assorted models, to any and all purchasers, that is to say, to purchasers who bought for their own use or consumption, those who purchased them to resell and any other purchaser, by actual count the sales in quantities of five Analytical Balances exceeded and were more numerous than the sales thereof in any other quantity.* [Italics added.]

Pertinent portions of defendant's Exhibit A, the consular report, are also set out here:

(c) Mettler has two home consumption prices, retail and wholesale, which do not vary with the status of the purchaser, such as wholesaler, retailer, or consumer.

(d) Prices vary with the quantity purchased. Any purchaser, whether wholesaler, retailer, or consumer, gets retail prices when ordering one to four balances, and wholesale prices when ordering five, ten, fifteen, or more balances. An exception has been made with Mettler's local agents or distributors who are given the wholesale prices for orders placed by them for less than five balances at a time. At present there are no agents or distributors.

\*     \*     \*     \*     \*     \*     \*

2) Wholesale or retail prices do not vary in accordance with the quantities purchased or the status of the purchaser. To all purchasers in Switzerland who

---

[2] This price schedule forms the basis of the appraised values found by the appraiser.

[3] This price schedule forms the basis of the entered and reappraised values.

ordered up to four balances of any one model, or assorted, the regular retail prices applied. To those who ordered five or more balances, assorted if desired, a reduction or wholesale discount of 25 percent was allowed. * * *

The trial court and the appellate division found, *inter alia*, on the basis of the italicized portion of Exhibit 1 above, that the usual wholesale quantities were 5 of one or assorted models. This finding resulted in a holding by those courts that the proper valuation for each importation was the lower entered or claimed value, rather than the higher appraised value.

Counsel for appellant contends, among other things, that a partial list of Mettler's sales, included in the above-mentioned consular report, shows a total of thirteen sales, all but three of which were for 1 or 2 balances each; that the usual wholesale quantity is determined by the major number of sales in wholesale quantities; and that, therefore, the usual wholesale quantity which forms the basis for proper valuation in this case is 1 to 4 balances.

The list of transactions referred to sets out seven sales of 1 balance each under the heading "Retail Transactions." There are also six sales listed as "Wholesale Transactions." In the latter group, two of the sales are for 5 balances, one for 7, one for 2, and two for 1. According to the report, the last three sales were to E. Mettler's agent for the western part of Switzerland, who, because he purchased larger quantities in the course of time, was entitled to the wholesale price irrespective of the number ordered at any one time.

It seems clear to us that seven of these thirteen sales are *retail* transactions; they are so designated in the consular report relied on by appellant to support his contention. Further, it seems clear from the said report that the last-mentioned three "wholesale transactions" with the above-mentioned agent were *not* in the ordinary course of trade within the meaning of section 402 (c). For these reasons, there are only three wholesale sales listed in that report, two of 5 balances and one of 7, which may properly be considered as entering into a determination of the usual wholesale quantities. Accordingly, we think that this contention advanced by appellant is without merit.

The above-discussed contention is ancillary to appellant's basic contention that the italicized statement of Exhibit 1 above is an unsupported conclusion by affiant which is not sufficient evidence to establish the usual wholesale quantities or overcome appellee's statutory two-fold burden of proof. It is claimed by counsel for the Government that our holding in the *Brooks Paper* case, *supra*, is directly controlling.

In the *Brooks* case the question before us was whether the importer had introduced substantial evidence to establish the usual wholesale quantities. The sole evidence in the record relating to that essential element of the importer's case was a bare statement in an affidavit

introduced by the importer that "the great majority of sales were in quantities of 15,000 sqaure meters or more." We pointed out that this court has established in prior decisions, cited therein, that the language "in the usual wholesale quantities," as used in section 402, refers to that particular wholesale quantity which constitutes the major portion of sales or offers for sale in wholesale quantities (the so-called "major portion of sales" rule). We held, for reasons there set out in considerable detail, that the above statement was no more than affiant's own unsupported conclusion of an ultimate issuable fact—namely, the usual wholesale quantities—and hence was not substantial evidence of the same. That affiant did not use the statutory language, but the judicial equivalent thereof, was regarded by this court as an immaterial matter of form rather than substance.

Both the affidavit of Exhibit 1 and the report of Exhibit A clearly establish that in the ordinary course of trade there are, in the instant case, only two price categories, and that price varied only with the quantity purchased. *Any purchaser*, whether wholesaler, retailer or consumer, who bought in quantities of 1 to 4 paid according to the higher price schedule; but *any purchaser* who bought 5 or more balances paid according to the second price schedule, at a wholesale discount of approximately 25%. We have been unable to find any prior decision by this court which involved such a price arrangement.

The purpose of determining the *usual* wholesale quantities under section 402 is to ascertain the proper valuation of the imported merchandise. Foreign value is not the price to wholesalers, but the price in the usual wholesale quantities. The law is not concerned with the persons who buy, but the manner in which they buy. *United States* v. *Richard & Co.*, 15 C. C. P. A. (Customs) 143, T. D. 42216. It is obvious that in this case such valuation would be the same if 5, or 7, or 10, or 20 balances were to be regarded as the usual wholesale quantity. In our opinion, there is here *only one wholesale quantity* in the ordinary course of trade, namely, *5 or more* balances. We think it necessarily follows, in view of the foregoing, that in this case the usual wholesale quantity within the meaning of section 402 (c) is *5 or more* balances.

Because of the view which we take of the case, as discussed above, our decision in the *Brooks Paper* case, *supra*, is not regarded as controlling. *If* the italicized portion of Exhibit 1 were a bare statement standing alone, as in the *Brooks* case, we think that, as a matter of law, it would not be substantial evidence of the usual wholesale quantities sufficient to meet plaintiff's two-fold statutory burden of proof. True, it is not a conclusion in the same sense as the statement in issue in the *Brooks Paper* case, *supra*, but it is in the nature of a statement of fact. However, we would still be left to surmise whether affiant had properly considered and determined such relevant factors

as the legal effect of sales to retailers for resale; or whether he had properly concluded that any given sales quantity was not, in contemplation of law, a wholesale quantity within the purview of section 402, and hence not to be considered in determining what is the usual wholesale quantity. See *Brooks Paper* case, and cases discussed therein. Thus, we think that a bare statement of that kind would not be such evidence which affords a substantial basis of fact from which the fact in issue—namely, the usual wholesale quantities—can be reasonable inferred. *Brooks* case, citing *National Labor Relations Board* v. *Columbian Enameling & Stamping Co.*, 306 U. S. 292.

We think it unwise to attempt to set out an all-inclusive formula as to what is or is not substantial evidence of the usual wholesale quantities. That must await case by case development in the light of the *Brooks* decision and other pertinent decisions by this court. Perhaps less may be held sufficient, but where the exporter of the imported merchandise is the sole producer of such merchandise in the country from which exported, as in this case, we think the party challenging the appraised value in the first instance would be wise to at least present a *summary* of the relevant sales for the pertinent time period, so that the customs courts may be able to decide all relevant questions of law and fact in order to determine what is the *usual wholesale* quantity. But *cf. United States* v. *Rodier, Inc.*, 23 C. C. P. A. (Customs) 336, T. D. 48196.

In view of our conclusion that the usual wholesale quantity in this case must necessarily be *5 or more* balances, we are of the opinion that the trial court and the appellate division did not try the case on the proper theory of law. However, under the theory which we consider correct, the proper foreign value for each importation of balances would still be the reappraised value as found by those courts, rather than the appraised value as contended by appellant. In some instances, this court has held that since an appeal is from the judgment and not the opinion of the court below, the judgment may be affirmed although the opinion upon which it is based contains an erroneous statement of the law. *National Sanitary Rag Co.* v. *United States*, 23 C. C. P. A. (Customs) 200, T. D. 48051 (a classification case), and authorities cited therein. Since this is a reappraisement appeal in which our scope of review is confined to questions of law, we think the proper course is to *reverse* the judgment and *remand* the cause, as to the seven cases involving balances, for a reconsideration of the issue of foreign value in accordance with the views herein expressed.[4]

As noted at the outset of this opinion, one of the eight consolidated cases in this appeal involves an importation of special magnifiers for use with these balances. Appellant has two very general assignments of error directly relating to this importation. One assignment states,

---

[4] See *United States* v. *Semon Bache & Co.*, 25 C. C. P. A. (Customs) 387, T. D. 49466 and *United States* v. *Semon Bache & Co.*, 27 C. C. P. A. (Customs) 89, C. A. D. 67.

in substance, that the courts below erred in finding and holding that the foreign value of the magnifiers is the reappraised value, which equals the claimed invoice price plus 6% Swiss sales tax. The other assignment states, in substance, that those courts erred in not finding and holding that the foreign value is the appraised value. Further, we are unable to find in appellant's brief any specific reference to alleged errors by the courts below with respect to this particular case. Indeed, there is only the briefest reference therein that there was such an importation. Nor can we recall any more specific reference by appellant to this case during oral argument.

While this court is not disposed to be technical upon this subject, the assignment of errors should clearly, by express words or fair implication point out the particular errors upon which appellant intends to rely to secure a reversal. The object of the rule requiring an assignment of errors is to enable the court and opposing counsel to see on what points appellant's counsel intends to ask a reversal of the judgment, and to limit discussion to those points. *United States* v. *Belgam Corp. et al.*, 22 C. C. P. A. (Customs) 402, T. D. 47402; *United States* v. *J. L. Galef*, 18 C. C. P. A. (Customs) 180, T. D. 44377. The foregoing requirements have their basis in section 2601, Title 28, U. S. C., and its statutory predecessors.

Here, insofar as this particular appeal to reappraisement is concerned, appellant's assignments of error amount to little more than broad allegations that the division and the trial courts erred in reaching a decision urged by appellee, and in not reaching a decision urged by appellant. We think that as to this particular one of the consolidated appeals there is a clear failure to comply with the foregoing rules, as set out in the *Belgam* and *Galef* cases. In view of this, and in view of the almost complete absence of any reference to alleged errors with respect to this importation in the brief and oral argument of appellant (see *United States* v. *Joseph G. Brenner Co.*, 19 C. C. P. A. (Customs) 105, T. D. 45243), we decline to consider these assignments of error. Accordingly, the decision of the appellate division in the appeal involving this importation must necessarily be affirmed.

In view of the foregoing, the judgment of the court below is *modified* and the cause *remanded* for further proceedings in conformity with this opinion.